IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



MICHAEL LEBLANC, §
 §
    Plaintiff, §
 §
VS. § NO. 4:07-CV-714-A
 §
CITY OF WATAUGA, ET AL., §
 §
    Defendants. §

MEMORANDUM OPINION
and
ORDER

On April 3, 2008, defendants, City of Watauga and C.D. Riley ("Riley"), filed a motion for summary judgment in the above-captioned action. Pro se plaintiff, Michael LeBlanc, responded on May 13, 2008, and defendants replied thereafter. Having considered defendants' motion, plaintiff's response, defendants' reply, the summary judgment evidence, and applicable authorities, the court concludes that defendants' motion for summary judgment should be granted to the extent provided herein.

I.

Plaintiff's Claims[1]

As more fully discussed below, plaintiff alleges causes of action against defendants through 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Plaintiff also asserts state law claims under article I, sections 9 and 19 of the Texas Constitution and the Texas Tort Claims Act.

---

[1] Plaintiff's live pleading is his original complaint.

## II.

### The Motion for Summary Judgment

Defendants maintain that they are entitled to judgment as a matter of law on each of plaintiff's claims. With respect to his § 1983 claims, they argue that they are barred by limitations; as a matter of law he cannot establish such claims; and Riley is entitled to qualified immunity. Defendants contend that plaintiff's claims under the Texas Tort Claims Act must fail because of a lack of proper notice; because such claims do not arise from the condition or use of personal property or the condition of real property; and because plaintiff's alleged injury is not compensable under such act.[2]

## III.

### Facts

The summary judgment evidence can be summarized as follows:

Plaintiff is the former manager of Collision Masters, and purchases and sells vehicles for Advantage Automobile Sales, which is an entity related to Collision Masters. Both entities are located in Haltom City, Texas. On or shortly before September 20, 2005, plaintiff hired Best Towing and Recovery Services ("Best Towing") to repossess a 2000 Toyota Celica ("Celica") from James Hatcher ("Hatcher"). Hatcher was a former employee of Collision Masters.

---

[2] As discussed below, the court concludes that plaintiff's § 1983 claims must fail as a matter of law, and it uses its discretionary authority to dismiss his pendent state law claims. The court does not reach decision on any of the asserted grounds for summary judgment other than those specifically addressed herein.

On September 20, Best Towing took the Celica from the parking lot of a bowling alley. Hatcher reported the Celica stolen when he discovered that it was missing. Officer Sean Romer ("Romer") was initially dispatched to the scene, and he prepared a crime report. The crime report contains a narrative, which relates Hatcher's story of what happened. Hatcher identified plaintiff as a possible suspect in the theft. He explained that he had worked for Collision Masters, and plaintiff had given him the Celica in lieu of a raise when Hatcher had been promoted. Hatcher stated that title to the vehicle had been signed over to him, and later produced a Texas certificate of title that indicated that the Celica was registered in his name. The title did not appear on its face to be forged, and it listed no lienholders. Texas Department of Motor Vehicle records indicated that Hatcher was the owner of the Celica.

Romer also spoke by telephone with Louie James Williams ("Williams"), who was the tow truck driver that repossessed the Celica. Williams confirmed that plaintiff had hired him to repossess the Celica, and said that he had given notice of the repossession to the Watauga Police Department. Romer concluded that the Celica had been unlawfully repossessed by plaintiff and listed it in the national electronic database as stolen.

Plaintiff, however, had a different story. Plaintiff's story was that Hatcher was the one who stole the vehicle and title, and that he somehow fraudulently transferred title to himself from Advantage Automobile Sales, the previous owner.

3

Hatcher had been given permission to drive the Celica when he was employed, but he failed to return it upon termination of his employment. Another unidentified employee told plaintiff that Hatcher had stolen title to the vehicle and put it into his name. Plaintiff says that Advantage Automobile Sales never received payment from Hatcher for the vehicle.

On September 21, 2005, the case was assigned to Riley, a detective with the Watauga Police Department. Riley reviewed Romer's crime report, and Hatcher contacted Riley and told him that he believed he had located the Celica at Best Towing's facility. Riley called Williams, and Williams agreed to release the Celica to Hatcher. However, plaintiff then called Riley and attempted to explain his side of the story. Plaintiff summarizes that telephone conversation as follows:

> In the telephone conversation between me and Riley, Riley told me I did not have the right to repossess the vehicle, that Riley could see my past criminal record, and because of that he was going to consider the vehicle [] stolen and not repossessed. I told Riley that I was going to have him terminated from his job. Riley became angry and told me I was a criminal and threatened me, saying "I'm going to get you" and hung up the phone.

Pl.'s App. at 4. In the telephone conversation, plaintiff admitted that he had not filed a theft report on the vehicle, but he said he would do so. Riley explained that the Celica would be returned to Hatcher. According to Riley, plaintiff "became irate" and told him that he would sue Riley and the city if the car was released to Hatcher. Defs.' App. at 3. Riley then went to Best Towing's facility and assisted Hatcher in recovering the

4

Celica.

On September 23, 2005, Riley contacted Assistant Tarrant County District Attorney Alfredo Valverde ("Valverde") in regards to the case. Riley recited to Valverde what had happened and the contentions of Hatcher and plaintiff. Valverde concluded that prosecution of the case would be appropriate.[3] Based on Valverde's conclusion, Riley prepared a warrant for the arrest of plaintiff, which was signed on September 23, 2005.

On November 24, 2005, Thanksgiving Day, plaintiff was pulled over for speeding by an officer of the Arlington Police Department. The officer arrested plaintiff based on the outstanding warrant. Thereafter, plaintiff learned that the grand jury had no-billed him in connection with the charges of theft of the Celica. On March 2, 2007, plaintiff initiated an action against Riley in state court. On November 21, 2007, plaintiff amended his state court petition and filed his original complaint in this action. On March 10, 2008, the state court granted summary judgment in Riley's favor.

---

[3] Valverde was more persuaded by Hatcher's story than by that of plaintiff. In his deposition, he explained that:

> [T]he credence to me went to the person that reported the vehicle stolen because . . . all the indicators showed . . . if he had stolen the title or if he had stolen . . . the vehicle, he wouldn't call the police . . . and say, "Hey, . . . this thing that I just stole, somebody stole from me." It just doesn't happen, it's not logical at all. And also when somebody has something taken and they never report [it] to [] the police department, that also goes against the credibility of the person as to whether or not they are telling the truth . . . .

Defs.' App. at 37.

# IV.

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. <u>Anderson</u>, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the nonmoving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 256. To meet this burden, the nonmovant must "identify specific evidence in the record[] and [] articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. <u>Anderson</u>, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. <u>Simmons v. Lyons</u>, 746 F.2d 265, 269 (5th Cir. 1984).

V.

Analysis

A. There Has Been No Violation of the Constitution or Other Federal Law.

In order to reach the conclusion that plaintiff has failed to establish a fact issue as to whether or not there has been a violation of federal law, the court must first characterize his federal causes of action. Plaintiff purports to assert claims through 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. At one point, he even mentions the Ninth Amendment.

However, plaintiff's Fourth Amendment claims represent his only possible source of relief based on federal law. In that connection, plaintiff alleges that he has been deprived of "his right to freedom from illegal seizure of his person, freedom from unlawful arrest without evidence in support [] thereof, and freedom from illegal detention and imprisonment." Compl. at 4. Plaintiff also alleges that he was deprived of his rights to "freedom from illegal search of his place of business and illegal seizure of his property." Id.[4]

---

[4]Other than the foregoing conclusory statement, plaintiff has not alleged anything or adduced any evidence as would create a genuine issue of material fact as to whether there was _any_ search of his place of business, much less an illegal or unreasonable search.

Further, plaintiff's claim of illegal seizure of property appears to be based on Riley's return of the Celica to Hatcher. This claim accrued in September of 2005, and accordingly is barred by limitations. See Gartrell v. Gaylor, 981 F.2d 254, 256 (5th Cir. 1993) (holding that federal law does not provide a statute of limitations for civil rights actions brought under 42 U.S.C. § 1983, so the court applies the forum state's general personal injury limitations period); Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon
(continued...)

7

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.[5] "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed <u>objectively</u>, justify the action.'" <u>Brigham City, Utah v. Stuart</u>, 547 U.S. 398, 404 (2006) (quoting <u>Scott v. United States</u>, 436 U.S. 128, 138 (1978)). Plaintiff has failed to adduce any evidence as would create a fact issue as to whether the actions of Riley were reasonable.

Indeed, the record before the court establishes as a matter of law that Riley's actions were reasonable. When he was initially assigned the case, he relied on the crime report completed by Romer wherein Romer concluded that a theft had occurred. Riley then took further action to determine whether or not it would be reasonable to further pursue the case, conferring with Valverde, the assistant district attorney. Based on Valverde's conclusion that there was enough evidence to pursue the case against plaintiff, Riley did so.

Plaintiff has failed to raise a genuine issue of material fact as to whether or not his rights under the Fourth Amendment

---

[4](...continued)
2002) (prescribing a two-year statute of limitations for general personal injury actions).

[5]"Generally, the Fourth Amendment's guarantees apply in both criminal and civil contexts." <u>Linbrugger v. Abercia</u>, 363 F.3d 537, 541 (5th Cir. 2004).

8

were violated. For this reason, his federal claims against all defendants necessarily fail.

B.  Plaintiff's State Law Claims.

This court has supplemental jurisdiction over plaintiff's state law claims because it has original jurisdiction over his § 1983 claims. See 28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3). As discussed above, the court is dismissing all of plaintiff's § 1983 claims. Thus the only remaining claims in the above-captioned action are plaintiff's pendent state law claims, which the court now dismisses pursuant to the discretionary authority conferred by § 1367(c)(3). See Rhyne v. Henderson County, 973 F.2d 386, 395 (5th Cir. 1992).

VI.

Order

For the reasons discussed herein,

The court ORDERS that all claims and causes of action asserted by plaintiff through 42 U.S.C. § 1983 be, and are hereby, dismissed with prejudice.

The court further ORDERS that plaintiff's state law claims be, and are hereby, dismissed pursuant to the court's discretionary authority under 28 U.S.C. § 1367(c)(3).

SIGNED May 22, 2008.

JOHN McBRYDE
United States District Judge